# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 05-CR-0022-003-CVE |
| | ) | (12-CV-0321-CVE-FHM) |
| JOHN ELDRIDGE CONE, a/k/a Cowboy, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court are four motions: defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 151); defendant's motion to amend his § 2255 motion to a motion to withdraw and nullify guilty plea pursuant to Fed. R. Civ. P. 60(d)(3) (Dkt. # 161); defendant's motion to compel discovery (Dkt. # 179); and defendant's motion for signature redaction (Dkt. # 180).

### I.

On August 23, 2004, Broken Arrow police officers made a traffic violation stop in Broken Arrow, Oklahoma. Dkt. # 34, at 4; Dkt. # 87, at 27. In the course of the stop, the officers recovered methamphetamine from a male occupant. Dkt. # 34, at 4; Dkt. # 87, at 27. A female occupant of the vehicle told police that she had witnessed that male occupant enter a house in Tulsa and return to the car with the methamphetamine. Dkt. # 34, at 4; Dkt. # 87, at 13, 27. Although she did not give the address, she described the house with sufficient accuracy to allow police to identify it as the residence at 9305 East 46th Place, Tulsa, Oklahoma (Dkt. # 87, at 2), which was later identified as defendant John Eldridge Cone's residence. Tulsa Police officers, including Officers Anthony

First (First) and Nick Debruin, then established surveillance at the house and observed a blue Oldsmobile with three occupants pull into the driveway. Id. at 14-15. The driver got out of the vehicle and entered the house; he returned to the car after approximately ten minutes, and the car drove away. Id. This activity, in addition to the information about possible drug sales, in First's training and experience, indicated a drug transaction. Shortly after leaving the house, the blue Oldsmobile committed a traffic violation and was stopped by Tulsa Police. Id. at 15. The front-seat passenger jumped out of the car, fled on foot, and was never identified. Id. at 16. A search of the vehicle produced four ounces of marijuana. See id. at 18. The driver of the car, Christopher Deshawn Coulter (Coulter) told police that he purchased the marijuana at 9305 East 46th Place for about $1400, and that he believed more to be stored there. See Dkt. # 34, at 5, 7; Dkt. # 87, at 19, 21, 23.

Based on the information learned from Coulter and his investigation of the residence, First applied for a warrant to search the residence at 9305 East 46th Place, Tulsa, Oklahoma. Dkt. # 34, at 4. A Tulsa County District Court judge signed the search warrant. Id. at 6. The warrant was executed on August 23, 2004, and police recovered approximately one pound of crystal methamphetamine, $3500 in United States currency, scales, baggies, and numerous firearms, two of which had been reported stolen from a pawnshop in Parsons, Kansas. See Dkt. # 172, at 28. After waiving their Miranda rights, the occupants of the residence, defendant and Tanesha Anderson-El, both stated that the guns and drugs belonged to them. They were charged in state court and filed motions to suppress.

In his testimony at the state court suppression hearing, Coulter stated that he was at defendant's house on August 23, 2004; that he had known defendant for about thirteen years; and

that he was at defendant's residence for approximately 20 minutes. Dkt. # 34, at 7. However, Coulter denied having told any officer that he got marijuana from defendant's residence. Dkt. # 39-2, at 35. First testified at the state court suppression hearing that he made Coulter a deal. Dkt. # 39-2, at 14-15. First would "book him in simply on a misdemeanor," if Coulter cooperated, instead of a felony charge, which is what Coulter would normally have received because he had a prior possession of marijuana charge. Id. Coulter was subsequently charged with a misdemeanor instead of a felony.

On February 18, 2005, a federal grand jury returned a sealed indictment charging defendant and others with multiple drug and firearm offenses. Dkt. # 4. The grand jury charged defendant with conspiracy to sell and possess stolen firearms in violation of 18 U.S.C. § 371 (count one); being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (counts three and four); possession of stolen firearms in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (count eight); possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) (count nine); and possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count ten).

Defendant was arrested and arraigned on March 8, 2005. Dkt. # 16. The Court determined that defendant was financially unable to obtain counsel and appointed Steven Hightower as counsel. Dkt. # 17. Defendant filed a motion to suppress and quash, in which he argued that the affidavit in support of the search warrant of his residence "contained false and misleading information prohibited by Franks v. Delaware, 438 U.S. 154, 171-172 (1978)." Dkt. # 34. Defendant stated that the information in the affidavit attributable to Coulter was entirely false. Id. In support of his argument, defendant attached the transcript of Coulter's testimony from a state court suppression

hearing. Id. at 7. The government filed a response. Dkt. # 39. Defendant filed a supplemental motion to suppress and quash (Dkt. # 47), in which he stated that First and Coulter's testimonies were starkly different, including that First's testimony was "inconsistent with his surveillance." Id. at 1. Defendant argued that, because First recovered marijuana from the back seat and that, because Coulter, while under surveillance by First, never made any "furtive" movements, Coulter could not have been the one to place the marijuana in the back seat of the car, and First's testimony cannot be believed. Id. at 1-2. The government again filed a response. Dkt. # 51.[1]

A hearing on the motions was held on June 6, 2005. Dkt. ## 64, 87. At the hearing, First testified. However, Coulter did not, which left only a transcript of the state court proceeding in which the state court judge, in addressing a similar challenge to the same warrant, found that Coulter was not credible. Dkt. # 39-2, at 65-66; Dkt. # 64; Dkt. # 87, at 138. This Court found that First's testimony was credible; that defendant failed "to show that Officer First knowingly and intentionally, or with reckless disregard for the truth, included any false statement in his affidavit in support of the August 23, 2004 search warrant;" and that there was "no evidence that Officer First, or any other officers involved, acted other than in good faith in preparation of the affidavit and execution of the warrant." Id. at 3-4. This Court entered an opinion and order on June 17, 2005 (Dkt. # 64), denying defendant's motions to suppress and quash, and set trial for July 18, 2005 (Dkt. # 65). Defendant's counsel, Steven Hightower, filed an application to withdraw as attorney of record citing irreconcilable conflict with defendant and that defendant was "unhappy" with counsel's

---

[1] Defendant makes, and the government responds to, an additional argument in defendant's two motions to suppress and quash. Defendant sought to have count four of the indictment against him dismissed because, he argued, there was insufficient evidence connecting him to the firearm found in the course of his arrest. This Court ultimately found that argument unavailing (Dkt. # 64, at 5), and it is immaterial to the current proceeding.

representation and requested a new lawyer. Dkt. # 69. Thereafter, Stephen Knorr was appointed and entered his appearance as counsel for defendant. Dkt. # 72. Defendant filed multiple motions for continuances (Dkt. ## 74, 79, 110), including an oral motion for continuance, all of which were granted (Dkt. ## 76, 81, 90, 112). Thereafter, defendant petitioned the Court to enter a plea of guilty, and a change of plea hearing was held on January 9, 2006. Dkt. # 118; Dkt. # 118-1, at 1-2.

Defendant pleaded guilty to counts nine and ten of the indictment. Dkt. # 144. Count nine charged defendant with possession of methamphetamine in relation to the events of August 23, 2004. Dkt. # 4, at 22. Count ten charged defendant with knowingly using, carrying, and possessing multiple firearms during a drug trafficking crime in relation to the events of August 23, 2004. Id. at 23-24. In exchange for his guilty plea, the government agreed to dismiss the remaining counts of the indictment. Dkt. # 118-1, at 12. At the change of plea hearing, the Court reviewed defendant's appellate and post-conviction waiver.

> THE COURT: Do you understand that under some circumstances you or the government have a right to appeal any sentence that is imposed?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that your plea agreement has a very detailed and specific waiver of appellate and post-conviction rights?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: It is my duty to review that with you in detail. Do you understand that in consideration of the promises and concessions made by the United States in the plea agreement, you are knowingly and voluntarily agreeing to waive the right to directly appeal your conviction and sentence except as to any contested sentencing issues pursuant to 28 U.S.C., Section 1291?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that you are reserving the right to appeal from a sentence which exceeds the statutory maximum.

5

> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence as set forth in 18 U.S.C., Section 3742(b), and the cases of *Booker* and *Fanfan*?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that you are waiving the right to collaterally attack your conviction and sentence pursuant to 28 U.S.C., Section 2255, except for claims based on ineffective assistance of counsel which challenge the validity of your guilty plea or your waiver of appellate and post-conviction rights?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that you are waiving the right to have the sentence modified pursuant to 18 U.S.C., Section 3582(c), except for a Rule 35(b) motion filed by the government?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that you are expressly acknowledging that Mr. Knorr has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights?
>
> THE DEFENDANT: Yes, Your Honor.

Dkt. # 172, at 18-19. Sentencing was held on October 5, 2006. Dkt. # 143. The government moved for a third point reduction for acceptance of responsibility (Dkt. # 119), which was granted (Dkt. # 143). The Court sentenced defendant to 137 months total: 77 months as to count nine, and 60 months as to count ten, to run consecutively. Dkt. # 143. Defendant was sentenced to five years supervised release as to each count, to run concurrently. Id. The remaining counts, one, three, four, and eight of the indictment, were dismissed. Id. Defendant also requested to participate in a comprehensive drug treatment plan, which was granted. Id. A judgment and commitment was entered October 10, 2006. Dkt. 144.

On June 7, 2012, defendant, appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. # 151. The government filed a motion for extension of time to respond (Dkt. # 159), primarily because defendant, in connection with his guilty plea, waived his right to collaterally attack his conviction and sentence, and the government needed time to order and receive a transcript of the change of plea proceeding. Id. at 1-2. The Court granted the government's motion. Dkt. # 160.

Before the government responded, defendant filed a motion to amend his § 2255 motion, pursuant to Fed. R. Civ. P. 15(c)(1), to a motion to withdraw and nullify guilty plea pursuant to Fed. R. Civ. P. 60(d)(3). Dkt. # 161. Defendant stipulated "that [his] waiver was knowing and voluntary," and instead sought "relief based on a fraud upon the Court claim." Id. at 1-2. Defendant also filed a motion to compel discovery (Dkt. # 179) and a motion for signature redaction (Dkt. # 180). The government filed its responses (Dkt. ## 178, 181).

## II.

Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

In defendant's § 2255 motion, he argued that, because three officers involved in the investigation and search of his residence were later indicted on criminal charges, the testimony of those officers should be discounted as incredible. Dkt. # 151. Defendant further argued that Coulter, the informant, "testified that officers lied about the statements attributed to him," and that Officers Anthony First, Nick Debruin, Bruce Bonham, and Harold Wells provided false testimony.

7

Id. In defendant's motion to amend, however, defendant stipulated that he did waive his right to collaterally attack his conviction and sentence, and that "the waiver was knowing and voluntary." Dkt. # 161. Defendant argued that his original § 2255 motion actually claimed newly discovered evidence and that a court should not enforce a waiver if doing so would create a miscarriage of justice. Defendant contended that, because his "plea was based on fabricated and manipulated evidence as well as perjured testimony," the plea should be set aside. Id. at 2. The government asserts that defendant's § 2255 motion should be dismissed because defendant waived his right to collaterally attack his conviction and sentence.[2] Dkt. # 178, at 7.

The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable: "(1) whether the disputed appeal [or post-conviction proceeding] falls within the scope of the waiver of appellate [and post-conviction] rights; (2) whether the defendant knowingly and voluntarily waived his appellate [and post-conviction] rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . ." United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (citation omitted).

When determining the scope of an appellate or post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea." United States v. Novosel, 481

---

[2] Although the government fails to raise the issue, defendant's motion appears to be time-barred. Defendant filed his original motion to vacate, set aside, or correct sentence (Dkt. # 151) on June 7, 2012. However, the Tulsa World began reporting on November 8, 2009 that several police officers were part of a federal investigation related to police corruption. The trials of Nick DeBruin, Harold Wells, and Bruce Bonham were widely known and reported in the news by May 2011 when jury selection began in the trial of all three men, so defendant could have, with exercise of due diligence, discovered the names of the officers involved and the allegations at that time. However, because the government failed to raise the timeliness of defendant's § 2255 motion in its response, this Court will address the waiver issue.

8

F.3d 1288, 1291 n.1 (10th Cir. 2007). Challenges to the voluntariness of a guilty plea generally do not fall within the scope of a waiver. United States v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011). Hahn requires the consideration of two factors when a court is considering whether a defendant knowingly and voluntarily agreed to an appellate and post-conviction waiver. First, the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325. Second, the guilty plea must be the result of an adequate colloquy under Fed. R. Crim. P. 11. Id. A miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." Id. (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001) (citing United States v. Cockerham, 237 F.3d 1179, 1182 (10th Cir. 2001))). The "otherwise unlawful" exception is focused on the fairness of the proceedings, rather than result of the proceedings. United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007). The defendant bears the burden to show that a miscarriage of justice has occurred. United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

The first Hahn factor is whether defendant's claims fall within the scope of his waiver. Defendant's waiver states that "[t]he defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." Thus, defendant waived his right to collaterally attack his sentence based upon his claim that the search warrant contained false information.

For the post-conviction waiver to be enforceable, defendant must have knowingly and voluntarily agreed to the waiver. Under Hahn, the initial consideration is whether the plea agreement states that defendant knowingly and voluntarily agreed to the waiver. The next consideration is whether defendant's guilty plea was the result of an adequate Rule 11 colloquy. Not only did defendant's plea agreement state that his waiver was knowing and voluntary, but also the Court reviewed defendant's waiver with him at length at his change of plea hearing and confirmed that it was knowing and voluntary. Dkt. # 172, at 18-19. The Court questioned defendant to affirm that he "underst[ood] that [he] was waiving the right to collaterally attack [his] conviction and sentence pursuant to 28 U.S.C., Section 2255, except for claims based on ineffective assistance of counsel which challenge the validity of [his] guilty plea or [his] waiver of appellate and post-conviction rights[.]" Id. at 19. The Court also confirmed that defendant understood that he was "expressly acknowledging that [his attorney] ha[d] explained [his] appellate and post-conviction rights, that [he] underst[ood] those rights, and that [he] [was] knowingly and voluntarily waiving those rights[.]" Id. Defendant affirmatively stated that he understood that he waived his right to collaterally attack his sentence pursuant to 28 U.S.C. § 2255; that his attorney had explained those rights; and that his waiver was knowing and voluntary. Id. Further, defendant stipulated in his motion to amend that his waiver was knowing and voluntary. Dkt. # 161, at 1.

Finally, under Hahn, the third determination is whether enforcement of the post-conviction waiver would result in a miscarriage of justice. In his motion to amend, defendant asserted that newly discovered evidence, namely the Tulsa police officers' indictments, means that enforcement of his waiver would result in a miscarriage of justice. Dkt. # 161. However, defendant's argument does not fall within any of the four situations enumerated in Hahn. To satisfy the fourth factor,

"where the waiver is otherwise unlawful," "'the error [must] seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings.'" Hahn, 359 F.3d at 1327 (citing United States v. Olano, 507 U.S. 725, 732 (1993)). Circuit precedent clearly states that the focus should be on the lawfulness of the waiver and not on the result of the proceeding. United States v. Polly, 630 F.3d 991, 1001-02 (10th Cir. 2011) (citing United States v. Smith, 500 F.3d 1206 (10th Cir. 2007)). Because defendant "does not challenge the lawfulness of the waiver itself, enforcing the waiver . . . does not result in a miscarriage of justice." Id. at 1002.

Even assuming defendant had not waived his ability to collaterally attack his sentence, his motion must still be denied. Defendant does not make any colorable arguments to support his claim that First, the affiant for the search warrant, was in any way involved with the Tulsa police scandal. First was never indicted or identified as an unindicted coconspirator. And, it was First's investigation, which meant other officers worked under First's direction and oversight. Dkt. # 87, at 62, 64. Officer Debruin, although present at the traffic stop of Coulter's vehicle, was not the officer who recoverd the marijuana from the car, and he did not participate in interviewing either Coulter or the remaining vehicle occupant. Id. at 59, 62. Further, although defendant claims the search warrant and testimony of Coulter and First must have been false because the drugs were found in the trunk while no one saw Coulter access the trunk, the record does not support defendant's argument. All documents in the record instead state that the marijuana was found "inside the car." Dkt. ## 34, at 2; 39, at 2. Defendant's attorney, on cross-examination of First at the federal evidentiary hearing, stated that drugs were found in the back seat, and First confirmed that the marijuana was found in the back area of the passenger compartment. Dkt. # 87, at 41-42. Finally, the Court already held a hearing and considered the veracity of Coulter's testimony.

11

Defense counsel cross-examined First extensively at the evidentiary hearing regarding where the marijuana was found and whether First had sufficient probable cause for the search warrant. Id. at 30-38. Further, defendant does not present any newly discovered evidence in support of his § 2255 claim. He simply claims First lied. However, defendant already made those claims and presented evidence, which was considered by this Court, at the evidentiary hearing. See Dkt. # 87, at 10-83. Defendant had a full and fair opportunity to litigate his claims that information in the search warrant was false. Therefore, a § 2255 motion is not the proper vehicle to attack his sentence. Stone v. Powell, 428 U.S. 465, 480-81 (1976); United States v. Cook, 997 F.2d 1312, 1317 (10th Cir. 1993). Both defendant's original § 2255 motion (Dkt. # 151) and his amended § 2255 motion (Dkt. # 161) are denied.

### III.

Rule 60 of the Federal Civil Rules of Procedure provides no basis for defendant's requested relief. In construing subpart b, circuit precedent is clear that this rule does not apply to criminal proceedings. United States v. Spry, 260 Fed.Appx. 52, 54 (10th Cir. 2008); United States v. Ramirez, 211 Fed.Appx. 712, 714 (10th Cir. 2007); see also United States v. Mosavi, 138 F.3d 1365, 1366 (11th Cir. 1998) (per curiam) ("Rule 60(b) simply does not provide for relief from judgment in a criminal case."); United States v. O'Keefe, 169 F.3d 281, 289 (5th Cir. 1999) (same). Nor is Fed. R. Civ. P. 60 an independent source of jurisdiction in a criminal case. Ramirez, 211 Fed.Appx. at 714; see also United States v. Johnson, 159 Fed.Appx. 835, 838-839 (10th Cir. 2005) ("[W]hile Federal Rule of Civil Procedure 60(b) has a 'valid role to play in habeas cases,' it does not provide relief from judgment in a criminal case." (quoting Gonzalez v. Crosby, 545 U.S. 524, 533-34 (2005), and citing Mosavi, 138 F.3d at 1366)). Where a defendant's Rule 60 "arguments collaterally attack

the disposition of his federal *criminal* proceedings," "the 'only appropriate course of action open to the district court [is] to *dismiss*.'" United States v. Edge, 315 Fed.Appx. 92, 94, 96 (10th Cir. 2009) (quoting United States v. Graham, 248 Fed.Appx. 929, 931 (10th Cir. 2007)) (emphasis in original).

Fed. R. Civ. P. 60(d) states that "[t]his rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or (3) set aside a judgment for fraud on the court." Defendant's motion specifically identifies subpart three as his grounds for requesting relief. However, 28 U.S.C. § 2255 provides the "exclusive remedy for testing the validity of a judgment and sentence." Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996). This Court finds that, insofar as defendant intends to make a separate motion for relief under Fed. R. Civ. P. 60(d)(3), defendant's motion (Dkt. # 161) must be dismissed.

To the extent defendant requests in his motion to amend (Dkt. # 161) that he be allowed to proceed solely under Fed. R. Civ. P. 60 rather than § 2255, that must fail. Defendant continues to make arguments for relief under § 2255 in his motion to amend. He reiterates that his original motion was a motion based on newly discovered evidence and that a court should "not enforce a waiver that by doing so would create a miscarriage of justice." Dkt. # 161, at 2. Therefore, defendant's amended § 2255 motion (Dkt. # 161) is denied.

**IV.**

Defendant filed a motion to compel discovery. Dkt. # 179. Because defendant's § 2255 motion and amended motion are subject to his valid waiver, discovery is unnecessary. Pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings, defendant's motion is denied.

**V.**

In defendant's final motion, a signature redaction request (Dkt. # 180), defendant requests that, because of concerns regarding identity theft, his signature be redacted from all documents. However, defendant has not been required to provide any personal identifiers, and, in order to file a § 2255 motion pro se, a defendant must provide his signature. Therefore, defendant's motion for signature redaction (Dkt. # 180) is denied.

**VI.**

Rule 11 of the Rules Governing Section 2255 Proceedings instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a certificate of appealability should not issue as defendant has not made a substantial showing of the denial of a constitutional right. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. Defendant's application for a certificate of appealability shall be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and motion to amend, (Dkt. ## 151, 161) are **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's motion to compel discovery (Dkt. # 179) and motion for signature redaction (Dkt. # 180) are **denied**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **denied**.

**DATED** this 3rd day of October, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE